J-S40015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARLON GLENN | : | |
| | : | |
| Appellant | : | No. 3166 EDA 2022 |

Appeal from the PCRA Order Entered November 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004532-2017

BEFORE:   NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                     **FILED FEBRUARY 22, 2024**

Appellant Marlon Glenn appeals from the order dismissing his first Post-Conviction Relief Act[1] (PCRA) petition.   Appellant argues that David Rudenstein, Esq. (trial counsel)[2] was ineffective.  We affirm.

A prior panel summarized the relevant facts and procedural history in this case as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia police officers Andrew Miller, Terrance Lewis, Terry Tull, Earl Tilghman, and Kelly Walker, Philadelphia police detectives Joseph Centeno and James Burke, Philadelphia associate medical examiner Dr. Lindsay Simon, and Lerin Gilliard, David Westin, Von Williams, Margie Lazenbury, Carole Moore,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-46.

[2] David Rudenstein, Esq. (trial counsel) represented Appellant at trial and through Appellant's direct appeal to this Court.  ***See*** PCRA Ct. Op. at 2/9/23, at 2.

Dennis Moore Jr., and Cameron Davis. [Appellant] presented no evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

After work on Friday, March 3, 2017, Ramone Anthony Smith, the victim, drove his co-worker, Lerin Gilliard, to her home, but first stopped to pick up Appellant. After dropping off Gilliard, Smith and Appellant arrived at Smith's house on the 4800 block of Bouvier Street in Philadelphia. Smith and Appellant had been friends for several months and were also engaged in a sexual relationship, which had been limited to Smith performing oral sex on Appellant. Appellant, however, did not identify as homosexual, and he lived and shared a bedroom with a woman.

Sometime after 9:00 p.m., Appellant was in Smith's basement working out. Smith walked over to Appellant and began to straddle him, which made Appellant upset. The two men got into a struggle during which Appellant grabbed Smith's gun from a holster on Smith. The men proceeded upstairs into the kitchen, where Appellant, using Smith's gun, shot Smith one time in the back of the head.

Because Smith did not answer his phone after 9 p.m. on Friday, all day Saturday, and Sunday morning, Smith's friends, Cameron Davis and David Westin, grew concerned because they typically spoke with him every day. On Sunday, March 5, 2017, Davis and Westin went to Smith's house and noticed that Smith's Toyota Camry was missing. The friends entered Smith's house using a spare key that Smith had given them, and they discovered the house was in "complete disarray" and looked "ransacked." In the living room, couch pillows were on the floor, and Smith's television was missing. In the dining room, papers were scattered across the table. In the middle upstairs bedroom, which Smith had converted to a walk-in closet because he loved to shop and had a large collection of wallets, watches and shoes, many of Smith's things were gone. Westin found Smith's dead body in the kitchen with a pool of dry blood surrounding his head. The medical examiner determined that the cause of death was a gunshot wound to the back of the head.

Philadelphia police detectives then conducted an investigation of the shooting. When police arrived at Smith's house, Davis and Westin gave detectives a photo of Appellant, whom they believed was at Smith's house on that Friday night. Police were able to

identify Appellant and discovered his last known address was the 200 block of North 61st Street. Officers also recovered Smith's FitBit and cell phone, and an analysis of the FitBit showed that Smith stopped moving at 9:42 p.m. on March 3, 2017.

Officers also learned of Smith's car's vehicle identification number and placed it in stolen status. The next day, March 6, 2017, police located Smith's car on the 100 block of North Robinson Street, which is located approximately a block and a half away from Appellant's residence. Shortly after initiating surveillance on the vehicle, Appellant arrived. Wearing blue rubber surgical gloves, Appellant connected jumper cables to Smith's car. He also went inside the front of Smith's vehicle. Officers then approached Appellant, handcuffed him, and transported him to the Homicide Unit on 8th and Race Streets.

At Homicide, Appellant was placed in an interview room and waived his **Miranda**[fn1] rights. However, he later requested a lawyer, so detectives immediately ended their questioning. The next day, March 7, 2017, Appellant asked to resume speaking with Detective James Burns and again waived his **Miranda** rights. During questioning Appellant wrote "private" on a piece of paper, crossed it out after Detective Burns saw it, and then asked to use the bathroom. While Detective Burns and Appellant were out of the interview room, [Appellant] confessed to killing Smith and told him the events that led to Smith's death. Although Appellant indicated that he would repeat his confession on camera, Appellant refused to do so once he and Detective Burns re-entered the interview room. Instead, he claimed that what he told Detective Burns was merely a hypothetical.

[fn1] **Miranda v. Arizona**, 86 S.Ct. 1602 (U.S. 1966).

While Appellant was at the Homicide Unit, detectives executed a search warrant on Appellant's residence, and recovered items, including wallets, watches and shoes, which were later identified by Davis and Williams as items belonging to Smith. In addition, after police cleared the crime scene, Von Williams, Smith's close family friend, went to Smith's house to clean the residence. On a shelf in the kitchen near where Smith's body was found, Williams found a 9 millimeter Ruger fired cartridge casing. Police recovered Smith's gun sometime in May 2017, when it was confiscated from Kyvon Jenkins in Abington Township. Jenkins lived in the West Philadelphia area, approximately one mile away from where

Appellant resided. Ballistics testing showed that the fired cartridge casing found near Smith's body matched Smith's gun.

***Commonwealth v. Glenn***, 2438 EDA 2018, 2020 WL 602331, at *1-2 (Pa. Super. filed Feb. 7, 2020) (unpublished mem.) (citations omitted and formatting altered).

On December 27, 2017, a jury found Appellant guilty of one count each of voluntary manslaughter, carrying a firearm without a license, carrying firearms on public streets or on public property in Philadelphia, possession of an instrument of crime (PIC), and two counts of theft by unlawful taking.[3] On March 16, 2018, the trial court sentenced Appellant an aggregate term of twenty-one to forty-two years of incarceration.[4] ***See*** Sentencing Order, 3/16/18, at 1.

After the trial court denied Appellant's post-sentence motions, Appellant filed a timely appeal. On February 7, 2020, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal. ***See Glenn***, 2020 WL 602331, *appeal denied*, 237 A.3d 411 (Pa. 2020). Appellant filed a timely counseled PCRA petition, and on

_____

[3] 18 Pa.C.S. §§ 2503(a)(1), 6106(a)(1)), 6108, 907(a)), and 3921(a), respectively.

[4] Specifically, the trial court sentenced Appellant to consecutive terms of incarceration as follows: ten to twenty years for voluntary manslaughter, three and a half to seven years for carrying a firearm without a license, two and a half to five years for carrying firearms on a public street or public property in Philadelphia, two and a half to five years for PIC, and two and a half to five years for theft by unlawful taking. ***See*** Sentencing Order, 3/16/18, at 1.

November 28, 2022, the PCRA court dismissed Appellant's petition.[5] This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

1. Where the evidence at trial plainly supported a self-defense case, which was clearly more likely to succeed than a frivolous challenge to the identity of the perpetrator, did the PCRA court err by deciding that trial counsel was not ineffective and for not granting an evidentiary hearing on this issue?

2. Was trial counsel ineffective for not presenting a preserved discretionary aspects of sentence claim on direct appeal where that claim was plainly stronger than those that were put before this Court, and did the PCRA court err by determining otherwise?

Appellant's Brief at 5.

Appellant first argues that the PCRA court erred in rejecting his claim that trial counsel was ineffective for failing to pursue a claim of self-defense at trial. **See** Appellant's Brief at 11-12. Appellant contends that the evidence supported a self-defense jury instruction and trial counsel was ineffective for failing to request this instruction. **See id.** at 14.

---

[5] The PCRA court also entered similar orders dismissing Appellant's PCRA petition on November 29, 2022, and December 1, 2022. It is unclear from the record why these subsequent orders were filed. However, Appellant's notice of appeal was filed within thirty days from the earliest order. Therefore, we conclude that there is no impediment to our jurisdiction and appellate review. **See** Pa.R.A.P. 903(a) (providing that notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken); **see also Commonwealth v. Green**, 862 A.2d 613, 615 (Pa. Super. 2004) (noting that the timeliness of an appeal implicates this Court's appellate jurisdiction).

The Commonwealth responds that the PCRA court properly rejected Appellant's ineffectiveness claim because the evidence at trial did not support self-defense and instead reflected that "the uncontested medical evidence established that [Appellant] shot Smith in the back of the head." Commonwealth's Brief at 8-9.

This Court has explained that when reviewing the denial of a PCRA petition, our standard of review

> is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.
>
> Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> * * *
>
> [A] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered). Moreover, a PCRA petitioner is not

automatically entitled to an evidentiary hearing. Our Supreme Court has explained:

> the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). In order to obtain relief, the appellant must show that he or she raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Hairston*, 249 A.3d 1046, 1054 (Pa. 2021).

> The defense of self-defense necessarily requires that the appellant admit that the shooting was intentional in order to protect one's self. Likewise, an imperfect self-defense claim is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must be satisfied to prove unreasonable belief voluntary manslaughter. Thus, to maintain a self-defense or imperfect self-defense claim, [the] appellant must admit he intentionally shot the [victim] to protect himself.

*Com. v. Philistin*, 53 A.3d 1, 12 (Pa. 2012) (formatting altered and some citations omitted).

> Pursuant to Section 505 of the Crimes Code, self-defense is established and the use of force is justifiable "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Significantly, the use of deadly force, however, is not justifiable if the actor provoked the use of force against him or could have avoided the necessity of using force by retreating. *Id.* § 505(b).

*Commonwealth v. Busanet*, 54 A.3d 35, 51 (Pa. 2012). Our Supreme Court

has explained:

> To prevail on a justification defense, there must be evidence that the defendant (a) . . . reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat. The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (citations

omitted and formatting altered). Moreover, it is well settled that "[c]ounsel

cannot be deemed ineffective for failing to raise a meritless claim." *Id.* at

1118.

Here, the PCRA court addressed Appellant's first claim of error as

follows:

> [T]here was no evidence in the record that would justify a self-defense instruction. While [Appellant] did not testify, his two versions of the events that led up to the killing came into evidence through his admissions to the police. In his videotaped statement to police, [Appellant] denied shooting Smith. Accordingly, if [Appellant's] statement on video were believed, [Appellant] was not the shooter and self-defense was irrelevant.
>
> According to Detective Burns, [Appellant] gave an altogether different account of the shooting during a break outside of the interview room in which [Appellant] admitted shooting Smith. By this account, a struggle ensued between [Appellant] and Smith after [Appellant] became upset when Smith straddled him.

> However, [Appellant] never claimed that he believed that he was in any danger from Smith. [Appellant] stated that during the struggle, he took ahold of Smith's gun, which was holstered at the time. [Appellant] said that while Smith and [Appellant] were in the kitchen, [Appellant] panicked and he shot Smith one time. While [Appellant] did not say where he had shot Smith, the uncontested medical evidence established that [Appellant] shot Smith in the back of the head. [Appellant] never claimed that Smith was at any time in possession of the unholstered gun or any other weapon. He also never maintained that he was fearful of being injured in any way by Smith.

> Accordingly, [Appellant's] alternate version of the events was also completely inconsistent with self-defense. Because self-defense was refuted by [Appellant's] own versions of the facts, he was not entitled to a self-defense instruction.

> [Appellant] further argues that trial counsel was ineffective for not presenting a self-defense case. However, [Appellant] proffered no evidence that counsel could have presented in support of such a claim, and if such evidence existed, it would have been contradicted by [Appellant's] own versions of the facts.

> Because the record establishes that [Appellant] was not entitled to a self-defense instruction and that he lacked any evidence to present a self-defense case, trial counsel could not have been ineffective for failing to pursue a self-defense theory. No relief is due.

PCRA Ct. Op., 2/9/23, at 5-6 (formatting altered).

After review, we conclude that the PCRA court's findings are supported by the record and free of legal error, and the court did not abuse its discretion in dismissing Appellant's PCRA petition without a hearing. *See Sandusky*, 203 A.3d at 1043; *Hairston*, 249 A.3d at 1054. As the PCRA court noted, Appellant initially denied shooting Smith but later admitted that he "panicked and [] shot Smith one time." *See* PCRA Ct. Op., 2/9/23, at 5-6 (citing N.T., 12/22/17, at 36-46; 38-39). However, there was no evidence that Appellant

feared for his life and shot Smith because Appellant believed he was in danger. *See id.* at 5. Accordingly, a self-defense claim was not available to Appellant. *See Commonwealth v. Harris*, 665 A.2d 1172, 1175 (Pa. 1995) (explaining that self-defense necessarily requires the defendant to admit that the shooting was intentional and done in order to protect his own life and where the defendant claims the shooting was caused by mistake or accident, self-defense is not available because self-defense is mutually exclusive of the defense of accident or mistake).

On this record, there is no merit to Appellant's claim that trial counsel was ineffective for not pursuing a defense of self-defense. *See Sepulveda*, 55 A.3d at 1118 (stating that counsel is not ineffective for failing to raise a meritless claim). Further, because there is no merit to Appellant's argument concerning self-defense, counsel cannot be deemed ineffective for failing to request a jury instruction on self-defense. *See Philistin*, 53 A.3d at 12-13 (concluding that because the defendant was not entitled to a defense of self-defense, trial counsel cannot be ineffective for not requesting a self-defense jury instruction); *Sepulveda*, 55 A.3d at 1118. For these reasons, Appellant is not entitled to relief on this claim.

Next, Appellant contends that trial counsel was ineffective for failing to raise a challenge to the discretionary aspects of Appellant's sentence on direct appeal. Appellant's Brief at 16. Appellant notes that he preserved a discretionary sentencing claim in his post-sentence motion and that the issue was "plainly stronger" than the issues trial counsel argued on direct appeal.

***See id.*** Appellant asserts that if trial counsel pursued this issue, there is a reasonable probability that this Court would have remanded the case for resentencing. ***See id.*** at 17.

The Commonwealth responds that because there is no merit to Appellant's challenge to the discretionary aspects of his sentence, trial counsel was not ineffective for failing to pursue that claim on direct appeal. Commonwealth's Brief at 11-12. Further, the Commonwealth contends that Appellant failed to show that the outcome of his direct appeal would have been different had trial counsel raised a sentencing claim, and as such, Appellant failed to establish prejudice. ***Id.*** at 13-14.

"[C]laims implicating the discretionary aspects of sentencing raised in the context of an ineffectiveness claim are cognizable under the PCRA." ***Commonwealth v. Sarvey***, 199 A.3d 436, 455 (Pa. Super. 2018) (citations omitted).[6] In order to obtain relief on a claim that trial counsel was ineffective for failing to pursue a preserved challenge to the discretionary aspects of his sentence on direct appeal,

> a PCRA petitioner must demonstrate that the underlying
> sentencing issue has merit. ***See Commonwealth v. Jones***, 942
> A.2d 903, 906 (Pa. Super. 2008) ("[I]f the PCRA court can

---

[6] Here, there is no dispute that Appellant preserved his sentencing claim before the trial court, but that trial counsel abandoned the issue on Appellant's direct appeal. ***See Glenn***, 2020 WL 602331, at *6, n.3 (noting that although Appellant preserved a claim involving the discretionary aspects of his sentence in his Rule 1925(b) statement, Appellant "abandoned this claim in his brief," and therefore, this Court concluded the issue was waived on direct appeal).

determine from the record that the sentence was not excessive . . . then there is no underlying merit to the ineffectiveness claim and the claim must fail."). The actual prejudice a petitioner must prove with this type of sentencing claim is a showing of reasonable probability that a reviewing court on direct appeal would have awarded a reduction in his sentence if prior counsel challenged the discretionary aspects of his sentence. **Commonwealth v. Paddy**, 15 A.3d 431, 442 (Pa. 2011).

In this regard, we bear in mind that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v. Barnes**, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*). We will only vacate a sentence falling within the guidelines when the application of the guidelines would be clearly unreasonable. 42 Pa.C.S. § 9781(c)(2). An "unreasonable" decision is "one that is irrational or not guided by sound judgment." **Sarvey**, 199 A.3d at 456 (internal quotation marks and citation omitted).

Moreover, a court need not undertake a lengthy discourse to satisfy the requirement that it state its reasons for imposing sentence. **Commonwealth v. Rush**, 162 A.3d 530, 544 (Pa. Super. 2017). Rather, "the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Id.** (citation omitted). We presume a court that has the benefit of a PSI thus is apprised of all relevant sentencing criteria. **Commonwealth v. Jones**, 942 A.2d 903, 908 (Pa. Super. 2008).

**Commonwealth v. Lawson**, 1727 EDA 2022, 2023 WL 3837159, at \*4 (Pa. Super. filed Jun. 6, 2023) (unpublished mem.) (some formatting altered).[7]

Here, the PCRA court concluded that Appellant's ineffectiveness claim against trial counsel was meritless and cited to its prior opinion which addressed Appellant's underlying discretionary sentencing claim on

---

[7] **See generally** Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Appellant's direct appeal. *See* PCRA Ct. Op., 2/9/23, at 6 (citing Trial Ct. Op. 11/16/18, at 13-16). In the prior opinion, the trial court addressed Appellant's sentencing issue as follows:

Here, while [Appellant's] sentences on most of the charges were upward departures from the guidelines, the sentence was reasonable for the reasons explained by the [trial court] in detail during the sentencing hearing.[fn2] In determining the appropriate sentence in this case, the [c]ourt explicitly considered the evidence adduced at trial and during the suppression hearing, the sentencing memoranda submitted by both sides, the sentencing guidelines, victim impact statements from Smith's family and friends, [Appellant's] rehabilitative needs, the pre-sentence [investigation (PSI)] report, [Appellant's] mental health evaluation, the need for the protection of the public, and the gravity of the offense in relation to the impact on the victim and on the community. N.T. 3/16/17 at 33-35. The [c]ourt stated that the killing [Appellant] committed was not within the heartland of the typical voluntary manslaughter case and determined that there were aggravating circumstances that warranted deviating upwards from the guidelines and for imposing consecutive sentences. N.T. 3/16/17 at 35.

> [fn2] The [c]ourt sentenced [Appellant] to standard range sentences on the charges of carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)) and carrying a firearm on public streets or public property in Philadelphia (18 Pa.C.S. § 6108). The sentences on the charges of voluntary manslaughter (18 Pa.C.S. § 2503(a)(1)), PIC (18 Pa.C.S. § 907(a)), and theft by unlawful taking (18 Pa.C.S. § 3921(a)) were upward departures.

First, the Court observed that Smith had befriended [Appellant], helped him, and invited him as a guest in Smith's home, and yet [Appellant] put a bullet in the back of Smith's head. N.T. 3/16/17 at 36. The [c]ourt also noted that in cases of heat of passion voluntary manslaughter, it is not typical to find a defendant who, after such a killing, takes the time to canvas the victim's house and steal his personal belongings and car, all while the victim lay dead nearby. N.T. 3/16/17 at 36-37. In addition, the [c]ourt noted that such behavior showed a hardness of heart not often seen in voluntary manslaughter cases. N.T. 3/16/17 at 36. The

[c]ourt also stated that the consecutive sentences were necessary to achieve an aggregate sentence that was commensurate with the egregious misbehavior that led to the charges in this case. N.T. 3/16/17 at 37.

Accordingly, the record establishes that there were compelling reasons for the departure above the Guidelines and the consecutive sentences in this case. As a result, the sentence was reasonable and should not be disturbed.

Trial Ct. Op., 11/16/18, at 15.

Our review of the record confirms that the trial court carefully explained its reasons for imposing a sentence outside of the Sentencing Guidelines and explicitly considered all relevant sentencing factors, including the PSI report. *See* N.T. Sentencing Hr'g, 3/16/18, at 33-37. Therefore, we agree with the PCRA court's conclusion that Appellant's underlying discretionary sentencing claim is meritless. *See Lawson*, 2023 WL 3837159, at *4 (citing *Jones*, 942 A.2d at 908) (noting that where the trial court has the benefit of a PSI report, it is presumed that the trial court was apprised of all relevant sentencing criteria). Likewise, we discern no error of law or abuse of discretion in the PCRA court's conclusion that Appellant's ineffectiveness claim was meritless,[8] as trial counsel cannot be ineffective for failing to pursue a meritless claim on direct appeal. *See Sandusky*, 203 A.3d at 1043; *Sepulveda*, 55 A.3d at 1118; *see also Commonwealth v. Williams*, 980 A.2d 510, 525 (Pa. 2009) (explaining that counsel cannot be deemed ineffective for failing to argue a

---

[8] *See* PCRA Ct. Op., 2/9/23, at 6; Trial Ct. Op. 11/16/18, at 13-16.

meritless claim on appeal).[9]  Accordingly, Appellant is not entitled to relief on that issue.

For the reasons stated above, we conclude that Appellant is not entitled to relief.  Therefore, we affirm the order dismissing Appellant's PCRA petition.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/22/2024

---

[9] In any event, even if we found merit to Appellant's assertion that trial counsel was ineffective for failing to argue a challenge to the discretionary aspects of his sentence on direct appeal, there is no reasonable likelihood that the result of the proceeding would have been different.  **See Sandusky**, 203 A.3d at 1044.  As noted, the trial court aptly stated its considerations and its rationale for the sentence imposed.  **See** N.T., Sentencing, 3/16/18, at 33-37.  Therefore, Appellant cannot establish the prejudice prong of the test for ineffective assistance of counsel, and his claim fails on that basis as well.  **See Sandusky**, 203 A.3d at 1044.